## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEONARD BERNARD,** | : | |
| *Petitioner* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **JAMIE SORBER** *et al.*, | : | |
| *Respondents* | : | **No. 22-1668** |

### MEMORANDUM

PRATTER, J.                                                        FEBRUARY 3, 2023

A federal court's power to overturn a state conviction and sentence is limited. Mr. Bernard

seeks an order remanding his case to state court with a federal order that the state court resentence

him. But Mr. Bernard has not demonstrated that he is in custody in violation of the Constitution,

any federal law, or any treaty, the only bases on which a federal court may issue a writ of habeas

corpus in these circumstances. Therefore, the Court denies his petition.

### BACKGROUND

### I.       Factual Background

The Pennsylvania Superior Court set out the facts of the case in addressing Mr. Bernard's

direct appeal:

> [The victim, 76-year-old Alice] Stackhouse[,] testified that due to several chronic
> illnesses, she relied on in-home care services. Brianna Mitchell, Bernard's girlfriend
> (now wife), had provided in-home care for Stackhouse in 2014. Stackhouse fired
> Mitchell in November 2014, due to her belief that Mitchell had stolen Stackhouse's
> supply of pain medication.
>
> On December 20, 2014, Stackhouse answered a knock on her door. [Bernard] was
> at the door, and he forced his way in to Stackhouse's apartment. [Bernard] ripped a
> necklace off of Stackhouse while pushing her onto a couch.
>
> When Stackhouse began screaming, he slapped her in the face. He threatened to
> "cut" her if she didn't stop screaming. He proceeded to steal her wedding and
> engagement rings, as well as her watch.

1

[Bernard escorted] Stackhouse into another room using her walker. He ransacked the room, stealing more jewelry. He placed a beach bag over Stackhouse's head, and then bound her hands together with a belt. [Bernard] continued to ransack her apartment. Ultimately, he left the apartment with Stackhouse tied up on the floor.

\* \* \*

Detective Michael Buchmann testified [that] police immediately suspected Mitchell and her significant other were involved with this crime. Police obtained a search warrant for Bernard and Mitchell's home. Detective Jeffrey McCloskey testified that during the search, police found several items clearly belonging to Stackhouse.

*Commonwealth v. Bernard*, 241 A.3d 467 (Table), 2020 WL 6281756, at \*1 (Pa. Super. Ct. Oct. 27, 2020) (alterations in original) (quoting *Commonwealth v. Bernard*, 2286 EDA 2017, 2018 WL 4690993, at \*2–3 (Pa. Super. Ct. Oct. 1, 2018) (memorandum decision)).

Following a bench trial on February 25, 2016, Mr. Bernard was convicted of robbery, burglary, conspiracy, and other related offenses.[1] *Id.*; Dkt. No. CP-15-CR-0000120-2015, at 6–9. The court sentenced Mr. Bernard to a term of 33 to 60 years' imprisonment. *See* Dkt. No. CP-15-CR-0000120-2015, at 6–9.

## II.    Procedural Background

Following the bench trial, Mr. Bernard began the appellate process, at times proceeding *pro se* and at other times with the aid of counsel.

### A.  Mr. Bernard's Direct Appeal

In Pennsylvania, a defendant has 30 days in which to file a notice of appeal, either from the time the sentence was imposed or the date any post-sentence motion is denied or withdrawn. 234 Pa. Code § 720(A)(2), (3). Mr. Bernard did not file a notice of appeal within the prescribed time frame following his conviction. In July 2017, Mr. Bernard's right to file a direct appeal of his conviction was restored *nunc pro tunc* after a Pennsylvania Post-Conviction Relief Act ("PCRA")

---

[1]    Mr. Bernard represented himself during his bench trial.

proceeding and upon agreement with the Commonwealth of Pennsylvania. *Bernard*, 2020 WL 6281756, at *1; Dkt. No. CP-15-CR-0000120-2015, at 27 (entry dated July 5, 2017). On July 17, 2017, Mr. Bernard filed his notice of appeal to the Pennsylvania Superior Court, raising six issues on direct appeal, specifically that the trial court:

> (1) improperly allowed [Ms.] Stackhouse to identify him in court; (2) improperly admitted opinion testimony from a witness not qualified as an expert; (3) improperly admitted hearsay testimony from the same witness; (4) improperly admitted evidence subject to the spousal communications privilege; (5) erroneously found the evidence at trial sufficient and credible enough to support a guilty verdict; and (6) imposed an unreasonably excessive sentence.

*Bernard*, 2020 WL 6281756, at *1. The Pennsylvania Superior Court denied Mr. Bernard's appeal, finding the first, fourth, fifth, and six claims meritless and the second and third claims waived. *Id.* The Pennsylvania Supreme Court denied Mr. Bernard's petition for allowance of appeal on April 8, 2019. *Commonwealth v. Bernard*, 206 A.3d 488 (Pa. 2019) (Table).

### B. **Mr. Bernard's Collateral Appeal**

On July 22, 2019, Mr. Bernard timely filed his first PCRA petition alleging the same six bases for relief that he raised on direct appeal. *Bernard*, 2020 WL 6281756, at *2, *2 n.3. Shortly thereafter, counsel was appointed to represent him for his PCRA proceeding. *Id.* at *2. Mr. Bernard's appointed counsel filed a "no merit" letter and a petition to withdraw as Mr. Bernard's counsel. *Id.* In January 2020, the trial court filed its notice of intent to dismiss Mr. Bernard's petition under Pennsylvania Rule of Criminal Procedure 907, giving him 20 days to respond. *Id.* Mr. Bernard conceded that his PCRA petition as then constructed did not entitle him to relief but requested leave to amend his petition to add a claim under *Alleyne v. United States*, 570 U.S. 99 (2013). *Id.* In February 2020, the trial court denied his request as untimely, dismissed Mr. Bernard's PCRA petition, and permitted his appointed counsel to withdraw. *Bernard*, 2020 WL 6281756, at *2.

3

Mr. Bernard then appealed the trial court's dismissal of his PCRA petition to the Pennsylvania Superior Court. There, the Superior Court affirmed the trial court's dismissal of his PCRA petition, explaining that the Superior Court had already addressed and rejected Mr. Bernard's six claimed bases for relief as part of his direct appeal to the Superior Court. *Id.* at *3. The Superior Court did not address them further. The Superior Court did, however, overturn the trial court's decision to deny Mr. Bernard's motion for leave to amend his PCRA petition as untimely and remanded for the trial court to consider whether Mr. Bernard should have been permitted to add his claim under *Alleyne*. *Id.* at *3–4.

Mr. Bernard filed an amended PCRA petition on January 26, 2021, asserting a claim under *Alleyne*. Dkt. No. CP-15-CR-0000120-2015, at 38. The trial court filed its notice of intent to dismiss Mr. Bernard's amended petition under Pennsylvania Rule of Criminal Procedure 907 on April 29, 2021 and dismissed the amended PCRA petition on June 25, 2021. *Id.* at 38, 39. Mr. Bernard appealed this dismissal to the Superior Court but withdrew that appeal on November 5, 2021. *Id.* at 39, 42.

### C. **Mr. Bernard's Federal Habeas Petition**

After withdrawing his appeal from the Pennsylvania Superior Court, Mr. Bernard filed a petition for a writ of habeas corpus in this Court on April 24, 2022.[2] In it, he asserts the same six grounds for relief that he raised on direct appeal and in his first PCRA petition. In addition, he adds to his sixth basis for relief, the claim of an unreasonably excessive sentence, a claim that the trial court was biased against him when it imposed his sentence. Pet. for Writ of Habeas Corpus,

---

[2]       Pursuant to the prison mailbox rule, a *pro se* prisoner's habeas petition is deemed filed when he delivers it to prison officials for filing with the court. *Houston v. Lack*, 487 U.S. 266, 276 (1988). Here, Mr. Bernard certified that he gave his habeas petition to prison officials on April 24, 2022, and it will be deemed filed as of that date. Pet. for Writ of Habeas Corpus, at ECF 22.

at ECF 16. Finally, he appears to assert an ineffective assistance of counsel claim relating to his counsel on direct appeal and for his PCRA proceeding. *See id.*, at ECF 19.

This Court referred Mr. Bernard's petition to the Honorable Lynne A. Sitarski, United States Magistrate Judge, for a Report and Recommendation. Magistrate Judge Sitarski submitted a Report and Recommendation, in which she recommended that Mr. Bernard's petition be summarily dismissed.

Mr. Bernard objected to the Report and Recommendation, arguing that the magistrate judge misinterpreted one of his bases for relief. According to Mr. Bernard, his sixth basis for relief contains an argument that his sentence is unconstitutional under *Alleyne*.[3] In the same filing in which Mr. Bernard raises his objections to the Report and Recommendation, Mr. Bernard also seeks to amend his habeas petition and supplement it with another brief.[4] In that proposed supplemental document (assuming the Court has the power to consider it), Mr. Bernard appears to raise an ineffective assistance of counsel claim related to his pre-trial representation by a public defender and a claim under *Alleyne*.

## LEGAL STANDARD

A federal district court "shall not" grant a petition for habeas corpus "unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

---

[3]     While Mr. Bernard's habeas petition does not raise a challenge under *Alleyne*, Mr. Bernard is presumably basing this argument on his amended PCRA petition, in which he expressly raises a claim challenging his sentence under *Alleyne*. Obj. to R. & R., at ECF 26–30.

[4]     Mr. Bernard argues that the supplemental brief he wishes to file with his amended habeas petition was "missing from the petitioner's filing April 26, 2022 that this Honorable Court never received, that could [have] changed the outcome of this Honorable Lynne decision." Obj. to R. & R., at ECF 4. The Court's decision to allow Mr. Bernard to amend his habeas petition will depend, in part, on his ability to demonstrate that he should be allowed to overcome the procedural default on the claims he seeks to raise in his amended petition. *See infra* Section III.

of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Supreme Court has held that "[f]ederal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face," pursuant to 28 U.S.C. § 2254 Habeas Rule 4. *McFarland v. Scott*, 512 U.S. 849, 856 (1994); *Siers v. Ryan*, 773 F.2d 37, 45 (3d Cir. 1985). Under Habeas Rule 4, a federal court may take judicial notice of state court records, dockets, and/or state court opinions, as well as its own court records. *See Richardson v. Thompson*, No. 13-1466, 2014 WL 65995, at *3 (W.D. Pa. Jan. 8, 2014).

If a party timely objects to a magistrate judge's report and recommendation, the court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Regardless of whether timely objections are made, district courts "*may* accept, reject, or modify, in whole or in part," the magistrate judge's findings or recommendations. *Id.* (emphasis added). Hence, the Court is obliged to review the matter independently.

## DISCUSSION

### I.    Mr. Bernard's Habeas Petition Is Timely

Mr. Bernard's federal habeas petition is timely. The Pennsylvania Supreme Court denied Mr. Bernard's petition for allowance of appeal on April 8, 2019. *Commonwealth v. Bernard*, 206 A.3d 488 (Pa. 2019) (Table). From that date, Mr. Bernard had 90 days to file for a petition for a writ of certiorari in the United States Supreme Court. U.S. Sup. Ct. R. 13.1. Because he did not do so, his conviction became "final" for federal habeas purposes on July 7, 2019. *Greene v. Fisher*, 565 U.S. 34, 39 (2011).

From that date, Mr. Bernard had one year to file any PCRA petition. 42 Pa. Cons. Stat. §§ 9545(b)(1), (b)(3). He filed his first PCRA petition 15 days later on July 22, 2019. *Bernard*, 2020

WL 6281756, at *2. This filing also began tolling the one-year limitation period for filing a federal habeas petition. 28 U.S.C. § 2244(d)(2). On January 26, 2021, Mr. Bernard filed an amended PCRA petition asserting a claim under *Alleyne*. Dkt. No. CP-15-CR-0000120-2015, at 38. On November 5, 2021, Mr. Bernard withdrew his amended PCRA petition after submitting it to the Pennsylvania Superior Court for review. Dkt. No. CP-15-CR-0000120-2015, at 42. Once he withdrew his appeal of his PCRA petition from the Superior Court, the statutory tolling of the one-year limitation period ended. *Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003) (denying statutory tolling when PCRA petitioner's attorney was forthright about not appealing PCRA petition, and petitioner agreed to pursue federal habeas relief instead of PCRA appeal); *see also Swartz v. Meyers*, 204 F.3d 417, 420 (3d Cir. 2000) (discussing requirements of "properly filed" state collateral appeals for purposes of statutory tolling). At that time, Mr. Bernard had 350 days within which to file a federal habeas petition. He did so on April 28, 2022, 174 days later.[5]

## II.   Mr. Bernard's Habeas Petition Is Meritless

### A.   Properly Exhausted Claims

The six claims that Mr. Bernard raises in his habeas petition—the same six claims that he raised on direct appeal and in his initial PCRA petition—are properly exhausted. Mr. Bernard presented these claims in "one complete round of the state's established appellate review process" because he presented them on direct appeal to the Pennsylvania Superior Court and the Pennsylvania Supreme Court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). These six claims include allegations that:

(1) The trial court improperly allowed the victim, Ms. Stackhouse, to identify him in court;

(2) The trial court improperly admitted opinion testimony from a witness not qualified as an expert;

---

[5]    Mr. Bernard's motion to amend his habeas petition is also timely. Mr. Bernard filed the amended petition on June 28, 2022, which is 235 days after the statutory tolling period ended on November 5, 2021, so it is within Mr. Bernard's one-year statutory limitation period.

(3) The trial court improperly admitted hearsay testimony from the same witness;

(4) The trial court improperly admitted evidence subject to the spousal communications privilege;

(5) The trial court erroneously found the evidence at trial sufficient and credible enough to support a guilty verdict; and

(6) The trial court imposed an unreasonably excessive sentence.

### 1. Due Process Claims Regarding In-Court Identification

Mr. Bernard's first claim—that the trial court improperly allowed the victim, Ms. Stackhouse, to identify him in court—potentially presents a due process claim. The Report and Recommendation evaluates this claim as one relating to the admissibility of evidence. The magistrate judge notes that "whether evidence was incorrectly admitted at trial is solely an issue of state law; therefore, the issue is not subject to federal habeas review." R. & R. at 4–5 (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). While the decision to *allow* the in-court identification may be a matter of state law, this Court must determine whether allowing the in-court identification violated Mr. Bernard's constitutional rights. *See United States v. Scott*, 420 F. Supp. 3d 295, 318 (E.D. Pa. 2019); *Saunders v. Lamas*, No. 12-cv-7131, 2015 WL 9451022, at *15 (E.D. Pa. Aug. 13, 2015) (evaluating whether identification evidence admitted by the state court violated a § 2254 habeas petitioner's due process rights). The determination of whether Mr. Bernard's constitutional rights were violated is the basis for federal habeas review of this claim. *Estelle*, 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treatises of the United States.").

### i. *Ms. Stackhouse's Identification Did Not Violate Mr. Bernard's Due Process Rights*

To determine whether an in-court identification violates due process, the Court must determine whether the identification procedure was unduly suggestive and, if so, whether it created a substantial likelihood of misidentification. *See Scott*, 420 F. Supp. 3d at 318 (citing *United States*

*v. Emanuele*, 51 F.3d 1123 (3d Cir. 1995)) ("Identification evidence is admissible when the procedures used to procure it were not unduly suggestive or the identification is sufficiently reliable."). Courts take a "totality of the circumstances" approach to determine whether the identification was reliable even if the confrontation procedure was suggestive. *Neil v. Biggers*, 409 U.S. 188, 199 (1972). "The totality of the circumstances analysis is two-fold: First, the defendant has the burden of proving that the identification procedure was impermissibly suggestive." *Scott*, 420 F. Supp. 3d at 318 (citing *Biggers*, 409 U.S. at 198–99). This step of the analysis has two components: (1) the suggestiveness of the identification and (2) whether there was a good reason for not engaging in less suggestive procedures. *United States v. Stevens*, 935 F.2d 1380, 1389 (3d Cir. 1991).

Second, "[i]f the defendant establishes that the procedure was impermissibly suggestive, [courts] proceed to considering whether it created a 'substantial likelihood of misidentification' so that admitting the evidence would deny due process." *Scott*, 420 F. Supp. 3d at 318. However, "[a] 'suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability,' for reliability is the 'linchpin in determining the admissibility of identification testimony.'" *United States v. Brownlee*, 454 F.3d 131, 139 (3d Cir. 2006) (internal citations omitted). The Court considers five factors to gauge the reliability of the identification: "[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199–200. The purpose of this framework is to suppress only clearly unreliable evidence, "not to supplant the

jury's ordinary function of weighing what the witness says and choosing the weight to accord it." *United States v. Jones*, 689 F.3d 12, 18 (1st Cir. 2012).

Here, the facts do not lead to the conclusion that the in-court identification was unduly suggestive. The night of the attack, Ms. Stackhouse was shown two photo arrays with photos of Mr. Bernard, but she was ultimately unable to make an identification from these photo arrays. During Mr. Bernard's trial, Ms. Stackhouse was called to the stand to testify about the attack. When asked if she could identify her attacker in the courtroom, Ms. Stackhouse identified Mr. Bernard. Over Mr. Bernard's objection, the trial court admitted Ms. Stackhouse's identification.

Ms. Stackhouse's inability to identify Mr. Bernard from the photo arrays does not render her in-court identification unduly suggestive because "the failure of [a] witnesses . . . to identify a defendant in a previous photospread goes to the risk of misidentification, not the suggestiveness of the courthouse confrontation." *Emanuele*, 51 F.3d at 1130. Ms. Stackhouse testified that other than the two photo arrays, Ms. Stackhouse did not see Mr. Bernard, either in person or in a photo, and was not asked to identify him before his trial.[6] Finally, while Mr. Bernard was representing himself, it is not clear from the record whether Mr. Bernard was the only other person in the Courtroom besides the State's lawyers. But even if he was alone, that is not enough to find that the in-court identification was unduly suggestive because "[w]hile the presence of a defendant in a criminal case can be suggestive, without more, there is nothing . . . to establish that [the witness's] in-court-court identification is unduly suggestive and/or unreliable." *United States v. Douglas*, No. 14-cv-2191, 2014 WL 6986479, at *17 (E.D. Pa. Dec. 11, 2014); *see also Emanaule*, 51 F.3d at

---

[6]      Mr. Bernard requested a pre-trial line-up for identification purposes, but the court declined to grant the request because it determined that a line-up would be "cumulative to the evidence presented at trial attacking the credibility of [Ms.] Stackhouse's identification" given that Mr. Bernard had the opportunity to cross-examine Ms. Stackhouse regarding her failed identifications based on the photo arrays. *Bernard*, 2018 WL 4690993, at *2.

1129–30 (concluding that witnesses' identification of the defendant was impermissibly suggestive when they "saw the defendant being led from the courtroom in manacles by the U.S. Marshals").

Ms. Stackhouse's in-court identification of Mr. Bernard was not unduly suggestive, so Mr. Bernard's due process rights were not violated by the admission of the identification. For that reason, the Court denies Mr. Bernard relief as to claim one in his habeas petition.

### 2. Claims Relating to Pennsylvania State Law

The remainder of Mr. Bernard's claims provide no basis for federal habeas relief because they are questions of state law. Grounds two through four deal with the Pennsylvania Rules of Evidence. Whether evidence was incorrectly admitted at trial is solely an issue of state law and not subject to federal habeas review. *Estelle*, 502 U.S. at 67 (noting that "federal habeas corpus relief does not lie for errors of state law"). Mr. Bernard's fifth claim asserts that the trial court erroneously found the evidence at trial sufficient and credible enough to support a jury verdict. This claim is similarly not subject to federal habeas review because it involves a state court determination on state law, and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68.

Mr. Bernard's sixth claim—that the trial court imposed an unreasonably excessive sentence—is also a matter of state law.[7] Possible errors in sentencing by the state court are not cognizable on federal habeas review, so long as the sentence is within the statutory limit, because sentencing is a matter of state law. *See Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 43 (3d Cir. 1984); *U.S. ex rel. Jackson v. Myers*, 374 F.2d 707, 711 n.11 (3d Cir. 1967) (noting

---

[7] This claim is exhausted to the extent it is premised on the trial court's alleged bias against him and its alleged abuse of discretion in sentencing him consecutively rather than concurrently. Mr. Bernard's amended claim challenging his sentence under *Alleyne* is not properly exhausted because he withdrew his appeal of the denial of his PCRA petition in which he asserted this claim. Dkt. No. CP-15-CR-0000120-2015, at 39, 42. The lack of exhaustion of this claim will be discussed in greater detail below.

that "the severity of a defendant's sentence alone constitutes no ground for [federal habeas] relief," "so long as the [sentence] is within statutory limits"); *Smith v. Kerestes*, No. 08-cv-0061, 2009 WL 1676136, at *16 (E.D. Pa. June 15, 2009) ("[T]he Third Circuit has held that absent a Constitutional violation, a federal court has no power to review a sentence in a habeas corpus proceeding unless it exceeds the statutory limits."). Mr. Bernard argues that the trial court erred in sentencing him because the trial court was biased against him, and the trial court abused its discretion in imposing consecutive, rather than concurrent sentences. Pet. for Writ of Habeas Corpus, at ECF 16; *Bernard*, 2018 WL 4690993, at *4. "[T]he discretionary aspects of a sentence are a matter of state law, and are not subject to federal habeas review," and the decision to sentence a defendant consecutively rather than concurrently falls within the state court's discretion. *Harris v. Folino*, 208 F. Supp. 3d 658, 666 (E.D. Pa. 2016); *see also Estelle*, 502 U.S. at 67–68.

For all of these reasons, the Court denies Mr. Bernard relief as to claims two through six.

### B. Unexhausted Claims

In his objection to the Report and Recommendation, Mr. Bernard seeks to amend his habeas petition and supplement it with another brief. *See* Obj. to R. & R., at ECF 4, 6–30. In this supplemental brief, Mr. Bernard asserts an ineffective assistance of counsel claim against his pretrial counsel, and a challenge to his sentence under *Alleyne*. *Id.* at ECF 17–18, 21–28. Both claims are unexhausted and procedurally defaulted. *See O'Sullivan*, 526 U.S. at 845; *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).

To properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. Where the issue has not been fairly presented to the state court, the claim is unexhausted. *See Picard v. Connor*, 404 U.S. 270, 275 (1971); 28 U.S.C. § 2254(b)(1)(A). A claim to which there is no available state remedy because

12

of a state procedural bar is procedurally defaulted. *Coleman*, 501 U.S. at 731–32. "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Id.*

"[I]f a defendant fails to comply with state procedural rules and is barred from litigating a particular constitutional claim in state court, the claim can be considered on federal habeas only if the defendant shows cause for the default and actual prejudice resulting therefrom." *Teague v. Lane*, 489 U.S. 288, 308 (1989) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87–91 (1977)). Thus, were the Court to allow Mr. Bernard to amend his habeas petition and assert these claims, Mr. Bernard would first need to establish "cause for the default and actual prejudice" to overcome the procedural default. *Coleman*, 501 U.S. at 750. To show cause, the prisoner must "show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show prejudice, the prisoner has "the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Another way to overcome procedural default is to "demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750 (internal quotation marks omitted). To demonstrate a fundamental miscarriage of justice, the prisoner must establish that "a constitutional violation has probably resulted in the conviction of one who is *actually innocent*." *Schlup v. Delo*, 513 U.S. 298, 327 (citing *Carrier*, 477 U.S. at 496). The Third Circuit Court of Appeals has set forth a two-step inquiry for deciding a claim of actual innocence: (1) "whether the [prisoner] has presented new reliable evidence . . . not presented at

trial," and (2) "whether it is more likely than not that no reasonable juror would have convicted him in light of new evidence." *Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004) (internal quotation marks omitted).

### 1.  Ineffective Assistance of Counsel Claims

In Mr. Bernard's supplemental brief, he raises an ineffective assistance of counsel claim. Mr. Bernard asserts that counsel's performance was so deficient that it prejudiced Mr. Bernard, and that counsel's "errors at the preliminary hearing and arraignment were so serious as to deprive [Mr. Bernard of] any counsel at all which denied him of a fair and just trial." Obj. to R. & R., at ECF 21 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Mr. Bernard's ineffective assistance of counsel claim is not exhausted because he did not raise this claim on direct appeal, nor did he raise this claim during his PCRA proceedings.[8]

Moreover, because the time for Mr. Bernard to file a PCRA petition has expired, Mr. Bernard's ineffective assistance of counsel claim is procedurally defaulted. *See Coleman*, 501 U.S. at 731–32. To proceed on this claim, Mr. Bernard would need to demonstrate why this federal court should overcome the state procedural default and reach the merits. *See id.* at 749–50. Mr. Bernard could demonstrate that his direct appeal counsel, or counsel appointed for his initial PCRA position, provided ineffective assistance by failing to raise an ineffective assistance of counsel claim against Mr. Redmond. *See Carrier*, 477 U.S. at 488.

---

[8]      Mr. Bernard raised an ineffective assistance of counsel on two prior occasions, but neither of these occasions was on direct appeal or during the PCRA process. First, Mr. Bernard raised an ineffective assistance of counsel claim relating to counsel's representation before his trial in a letter to the Court dated November 7, 2015, in which he asserted that counsel was ineffective and wished to have him removed. Mr. Bernard also raised an ineffective assistance of counsel claim relating to the lawyer's representation in his Amended Post-Sentence Motion Verdict Relief in Reduced Sentence/New Trial/Vacate Term/Modifying Sentence/Arrest of Judgment filed on June 7, 2016. This motion was denied, and the issues raised therein were deemed waived in an order dated November 9, 2016.

### 2. *Alleyne* Claims

Mr. Bernard's *Alleyne* claim is not properly exhausted because this claim did not go through "one complete round of the state's established appellate review process." *O'Sullivan*, 526 U.S. at 845. Mr. Bernard submitted this claim to only one level of the state court, in his amended PCRA petition, but he withdrew his appeal. Dkt. No. CP-15-CR-0000120-2015, at 38, 39, 42. Even if Mr. Bernard had properly exhausted his claim, the claim provides him no basis for relief because *Alleyne* is not retroactive on collateral appeal under *Teague*. *United States v. Reyes*, 755 F.3d 210, 212–13 (3d Cir. 2014) ("[W]hile *Alleyne* set out a new rule of law, it is not retroactively applicable to cases on collateral review . . . ."). In other words, by raising this claim for the first time on collateral appeal, Mr. Bernard acted too late. *Id.* at 212.

"When the Supreme Court announces a new rule of law, it generally applies to cases still on direct review," unless it falls within one of two exceptions. *Id.* First, "a new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Teague*, 489 U.S. at 311 (internal quotation marks omitted). Second, "a new rule should be applied retroactively if it requires the observance of those procedures that . . . are implicit in the concept of ordered liberty." *Id.* (internal quotation marks omitted). The new rule of law set forth in *Alleyne* does not fall within either of these exceptions because it "announced a procedural, rather than a substantive rule," and it did not announce a "'watershed rule' of criminal procedure." *Reyes*, 755 F.3d at 212. The Third Circuit Court of Appeals also noted that "*Alleyne* provides only a limited modification to the Sixth Amendment rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L.Ed.2d 435 (2000)." *Reyes*, 755 F.3d at 212. *Apprendi*, and rules based on *Apprendi*, do not apply retroactively, and therefore *Alleyne* also does not apply retroactively. *Id.* at 213 (citing *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013). Mr. Bernard would only have been able to receive

the benefit of *Alleyne* on direct appeal, so by the time that he asserted this claim in his amended PCRA petition, it was procedurally defaulted.

To overcome this procedural default, Mr. Bernard would need to demonstrate cause and prejudice for the default. *Teague*, 489 U.S. at 308. In Mr. Bernard's case, that would require him to demonstrate that his direct appeal counsel provided ineffective assistance by failing to raise the *Alleyne* claim on direct appeal, and that he suffered prejudice as a result. *See Carrier*, 477 U.S. at 488. However, Mr. Bernard has suggested no theory on which he could demonstrate cause and prejudice to overcome this procedural default.

### III.    Amending the PCRA Petition

As noted above, Mr. Bernard seeks to amend his habeas petition and supplement it with another brief, in which he asserts his ineffective assistance of counsel claim and a claim under *Alleyne*. Habeas petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Federal Rule of Civil Procedure 15, the civil rule governing amending pleadings, instructs that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend should be "freely given" where amendment would not be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a)(2). "Futility means that the [petition], as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (internal quotation marks omitted).

#### A.   Ineffective Assistance of Counsel Claims

As discussed above, Mr. Bernard's ineffective assistance of counsel claim against his lawyer is futile because the claim is unexhausted and procedurally defaulted. The ineffective assistance of counsel claim is not exhausted because Mr. Bernard did not raise this claim on direct appeal, nor did he raise this claim during his PCRA proceedings. Thus, the Court cannot entertain

this claim. 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). Further, because the time for Mr. Bernard to file a PCRA petition has expired, Mr. Bernard's ineffective assistance of counsel claim is procedurally defaulted. *See Coleman*, 501 U.S. at 731–32. Allowing Mr. Bernard to amend his habeas petition to raise an ineffective assistance of counsel claim would be futile and thus the Court will not allow Mr. Bernard to amend his habeas petition to assert this claim.

### B. *Alleyne* Claim

Permitting Mr. Bernard to add an *Alleyne* claim would likewise futile because it is unexhausted and procedurally defaulted. The *Alleyne* claim is not properly exhausted because Mr. Bernard did not go through "one complete round of the state's established appellate review process." *O'Sullivan*, 526 U.S. at 845. He submitted this claim to only one level of the state court, in his amended PCRA petition, and then withdrew his appeal. Dkt. No. CP-15-CR-0000120-2015, at 38, 39, 42. Mr. Bernard's claim is also procedurally defaulted because *Alleyne* is not retroactive on collateral appeal under *Teague*. *Reyes*, 755 F.3d at 212–13. Thus, allowing Mr. Bernard to amend his habeas petition to assert a claim under *Alleyne* would be futile and thus the Court will not allow Mr. Bernard to amend his habeas petition to assert this claim.

CONCLUSION

For the reasons set forth above, the Court denies Mr. Bernard's habeas petition. An appropriate order follows.

BY THE COURT:

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

18